### PEABODY HOTEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 230.   Promulgated August 19, 1946.

*J. S. Allen, Esq., Allan Davis, Esq.,* and *M. O. Carter, C. P. A.,* for the petitioner.

*Bernard D. Hathcock, Esq.,* for the respondent.

## OPINION.

TYSON, *Judge*: The question presented involves primarily a redetermination of the petitioner's basis of the property acquired by it upon its organization in 1934. More specifically stated, the question is whether the basis in the hands of petitioner is (a) the cost to it of the property as determined by respondent, or, as contended by petitioner, (b) the same basis for such property in petitioner's hands as it would have in the hands of the Memphis Hotel Co. because acquired pursuant to a nontaxable reorganization or exchange. By stipulation the parties have concluded the issues originally raised as to the amounts of the deductions allowable for each of the years for depreciation and for amortization of bond discount and expense, if petitioner's contention as to the basis is sustained.

The petitioner contends, first, that the transfer of the Memphis Hotel Co. property to it on August 31, 1934, pursuant to the plan of

reorganization, meets the requirements of a nontaxable reorganization under section 112 (b) (4) and the first clause of section 112 (g) (1) (B) of the Revenue Act of 1934, as amended by section 213 (g) of the Revenue Act of 1939, in that as a party to and in pursuance of a plan of reorganization, petitioner acquired substantially all of the properties of the Memphis Hotel Co. solely for petitioner's voting stock and its assumption of the transferor's liabilities; and/or, second, that the transfer meets the requirements of a nontaxable exchange under section 112 (b) (5) of the Revenue Act of 1934; and, third, that from either viewpoint petitioner's basis for the property so acquired is the same as it would be in the hands of the transferor, the Memphis Hotel Co., under either section 113 (a) (7) or section 113 (a) (8) of the 1934 Revenue Act, or both. The applicable sections of the revenue acts are set out in the margin.[1]

---

[1] SEC. 112 [1934 ACT] RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION. [1934 Act as amended by section 213 (g) Revenue Act of 1939.]

(1) The term "reorganization" means \* \* \* (B) the acquisition by one corporation, in exchange solely for all or part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; \* \* \*

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. \* \* \*

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

The respondent contends that petitioner did not acquire its properties either as the result of a reorganization of the Memphis Hotel Co. or as the result of any exchange, within the meaning of the applicable provisions of the revenue acts, and that therefore he has correctly used the petitioner's cost basis in determining its tax liability for the years in question.

The answer to the question presented by petitioner's first contention of whether there is here a nontaxable reorganization depends, in part, upon answers to other subsidiary questions arising out of the definition of "reorganization" made in section 112 (g) (1) (B) as amended, *supra*, those subsidiary questions being as follows: (a) Whether the Peabody Hotel Co. acquired "substantially all the properties" of the Memphis Hotel Co.; and, if so, (b) whether those properties were acquired "solely for all or a part of its voting stock"; and, if (a) and (b) are answered in the affirmative, (c) whether there was preserved the continuity of interest requisite to a reorganization. We shall consider the subsidiary questions in the order as stated.

Did the Peabody Hotel Co. acquire "substantially all the properties" of the Memphis Hotel Co., the subsidiary question presented in (a) above? We think the question requires an affirmative answer.

In *Milton Smith*, 34 B. T. A. 702, it was held that whether the assets acquired by the transferee constituted "substantially all the properties" of the transferor depends upon the facts and circumstances in each case rather than upon any particular percentage, and it is clear from that case and the authorities cited therein that the question must be resolved as an ultimate conclusion of fact. It is established that the receiver's sale of the Gayoso farm and the resulting elimination of certain liabilities of the Memphis Hotel Co. was prior to the promulgation of the plan of reorganization and formed no part thereof. The court, in approving the plan as being "fair and equitable" to all classes of creditors of the Memphis Hotel Co., determined, in accordance with the plan, that the holders of Gayoso firsts, outstanding in the principal amount of $660,000 as a liability of the Memphis Hotel Co., had full priority rights to the entire Gayoso properties, including the impounded receipts from the receivership and bankruptcy trustee operations, and further recognized that such bondholders, to the extent of their resulting deficits, took the status of general creditors of the Memphis Hotel Co. It would therefore seem apparent that, at the time of its conveyances to the petitioner and the Gayoso Hotel Co., the Memphis Hotel Co. had no equity and consequently no real substantial property interest in the assets conveyed to the Gayoso Hotel Co., and this because the property so conveyed was of lesser value than the amount of the mortgage thereon evidenced by Gayoso firsts. That it was of lesser value is clearly shown by the fact that the holders of Gayoso firsts were issued, as general creditors,

3,960 shares of stock in petitioner to cover their deficits remaining after conveyance of the properties to the Gayoso Hotel Co., in which the holders of Gayoso firsts become sole stockholders. Furthermore, by its transfer of the Gayoso Hotel properties to the Gayoso Hotel Co., the Memphis Hotel Co. was relieved of all liability on the Gayoso firsts bonds, except for the above mentioned deficits. On August 31, 1934, pursuant to the plan, petitioner acquired all the properties of the insolvent Memphis Hotel Co. to which the latter's general creditors and the holders of Peabody firsts and Peabody seconds could look for payment of their claims, and such creditors had become the equitable owners of such properties through the court proceedings initiated in March 1933. While, from the viewpoint of the total properties of the insolvent Memphis Hotel Co. as they existed at the time of the August 31, 1934, transfers, it may be said that 13 per cent thereof was transferred to the Gayoso Hotel Co. and 87 per cent was transferred to the petitioner, we think that such percentages are not determinative of this question. In its decree of August 1, 1934, the court, in approving the plan which recognized the full priority rights of the holders of Gayoso firsts, as above stated, thereby carved out the Gayoso Hotel properties for separate transfer in partial satisfaction of the Memphis Hotel Co.'s liability of $660,000 on Gayoso firsts bonds. The fact that the transfers to the Gayoso Hotel Co. and to petitioner occurred on the same date and pursuant to the same plan is immaterial. Under the factual circumstances here present we conclude, and have so found as a fact, that by the transfer of August 31, 1934, the petitioner acquired "substantially all the properties" of the Memphis Hotel Co. on that date. See also *Western Industries Co.* v. *Helvering*, 82 Fed. (2d) 461; *Schuh Trading Co.* v. *Commissioner*, 95 Fed. (2d) 404; *Commissioner* v. *First Nat. Bank*, 104 Fed. (2d) 865; dismissed, 309 U. S. 691; and *Britt* v. *Commissioner*, 114 Fed. (2d) 10.

Were the properties in question acquired by petitioner "solely for all or a part of its voting stock," the subsidiary question presented in (b) above? In the consideration of this question, the liabilities to which the property acquired was subject and the liabilites assumed by petitioner as set out in our findings are to be "disregarded" under section 112 (g) (1) (B) as amended, *supra.* Included in these assumed liabilities are the outstanding Peabody seconds, in lieu of which petitioner issued new bonds in the same principal amount. *Southland Ice Co.*, 5 T. C. 842, 847, 850, and *New Jersey Mortgage & Title Co.*, 3 T. C. 1277. Also included in those assumed liabilities are the liabilities to which the property acquired was subject, such as the accrued real estate taxes; the various liabilities of the Memphis Hotel Co. and its bankruptcy trustee and the expenses and costs of the court proceedings not already paid by the trustee on August 31, 1934; and the I. Sam-

elson & Co. preferential right of reclamation claim for certain assets. After thus disregarding the assumed liabilities, the facts clearly establish that no consideration passed from petitioner for the properties acquired other than the issuance of its voting common stock to various classes of creditors of the insolvent Memphis Hotel Co. Briefly stated, petitioner acquired properties having a total book value of $4,594,-750.80, subject to assumed liabilities totaling $2,747,836.45, and immediately after the transfer to it of such properties it issued a total of 15,980 shares of its voting common stock to the transferor's creditors in consideration therefor. Petitioner also issued 7,123 shares of its voting common stock at $7 per share for a total $49,861 new working capital. We conclude that petitioner acquired the properties in question "solely" for "a part" of its "voting stock" within the meaning of section 112 (b) (4) and (g) (1) (B), *supra. Southland Ice Co., supra; New Jersey Mortgage & Title Co., supra;* and *Four Twelve West Sixth Co.,* 7 T. C. 26.

Was the continuity of interest requisite to a reorganization preserved, the subsidiary question presented in (c) above? This question must also be answered in the affirmative, for, pursuant to the plan and court orders, the Memphis Hotel Co.'s stockholders were eliminated as the equitable owners of the properties of that insolvent company and its creditors, to whom the stock in the Peabody Hotel Co. was issued, became such equitable owners instead, thus satisfying the required continuity of interest. *Helvering* v. *Alabama Asphaltic Limestone Co.,* 315 U. S. 179; *Helvering* v. *Cement Investors,* 316 U. S. 527.

Having concluded that petitioner acquired the properties in question pursuant to a "reorganization" as defined in section 112 (g) (1) (B) as amended, *supra,* and since it is clearly established that such acquisition was "in pursuance of the plan of reorganization" as to which, each, the petitioner and the Memphis Hotel Co. was a "party," we further hold that the transaction was a nontaxable reorganization under section 112 (b) (4), *supra.*

The next question presented is whether the transfer meets the requirements of section 113 (a) (7), *supra,* namely, that "immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them." The creditors of the insolvent Memphis Hotel Co. became the equitable owners of that company's assets from the time they invoked legal processes to enforce their full priority rights over the stockholders of that company. Pursuant to the plan of reorganization the bankruptcy trustee, the trustee under the indentures securing the bonds, and the debtor, the Memphis Hotel Co., joined in a transfer of substantially all of the latter's properties to petitioner, and immediately thereafter those former creditors were entitled to receive and were

issued, under the plan, 69 per cent of petitioner's voting common stock; that is, 15,980 shares out of the total of 23,103 shares which were to be issued pursuant to the plan, the remaining 31 per cent, or 7,123, being issued for cash at various times prior to the consummation of the plan on March 2, 1935, as evidenced by the court's final decree entered on that date. *Four Twelve West Sixth Co., supra.* Accordingly, immediately after the transfer, those creditors had an "interest or control in such property of 50 per centum or more," thus satisfying the required continuity of interest or control. *Helvering* v. *Alabama Asphaltic Limestone Co., supra; Helvering* v. *Cement Investors, supra;* and *Southland Ice Co., supra.* The fact that petitioner's voting stock was issued to the voting trustees instead of directly to the creditors is immaterial, for the voting trustees held legal title to the stock with the consent and for the holders of the voting trust certificates, who were the equitable owners, respectively, of specific numbers of shares of the stock of petitioner and entitled to receive the dividends thereon. *Federal Grain Corporation,* 18 B. T. A. 242.

Accordingly, we hold that petitioner's basis for the property in question is the same as it would be in the hands of its transferor, Memphis Hotel Co., under section 113 (a) (7) of the Revenue Act of 1934. Since the parties have stipulated the amounts of the deductions to which petitioner is entitled for depreciation and for bond discount and expense, they are also necessarily in agreement as to the correct "basis" which the properties would have had in the hands of the Memphis Hotel Co., petitioner's transferor.

In view of our conclusion as to the application of section 113 (a) (7), *supra,* it is unnecessary to consider or decide whether or not the transaction involved came within the provisions of section 112 (b) (5), *supra.*

The respondent erred in his determination.

*Decision will be entered under Rule 50.*